**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ORLANDO A. ACOSTA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 20-5541** |
| | : | |
| **GOVERNOR TOM WOLF, *et al.*** | : | |

# MEMORANDUM

**KEARNEY, J.** **November 12, 2020**

Philadelphian Orlando A. Acosta again *pro se* sues Pennsylvania Governor Tom Wolf, Secretary of State Kathy Boockvar, and the Pennsylvania Department of State, Bureau of Elections arising from the Governor's enforcement of Pennsylvania election law requiring a defined number of citizen signatures on a petition to permit him to appear on the November 3, 2020 election ballot amid the COVID-19 pandemic. He claims these state actors violated his right to "campaign to have a voice within the electoral process and to be able to exercise [his] right to be a candidate."[1] He raised these same claims this past summer seeking equitable relief. We dismissed his earlier case finding his claims frivolous. He appealed and his arguments are now before our Court of Appeals. He now turns around and sues the same persons for millions of dollars in damages based on the same facts. We cannot revisit the same issue. We entered a final order dismissing this claim with prejudice. Mr. Acosta must await our Court of Appeals' review. We bar Mr. Acosta from bringing this duplicative case. We deny his petition to proceed without paying the filing fees as his case is frivolous and dismiss his case with prejudice.

## I. Alleged *pro se* facts

Philadelphian Orlando A. Acosta began planning a strategy for his independent grassroots campaign for an unidentified elected position in February 2020.[2] Mr. Acosta reached out to voters to help with his campaign but ceased enlisting volunteers when Pennsylvania Governor Tom Wolf

issued emergency stay-at-home orders to address COVID-19 mitigation.[3] Mr. Acosta's cerebral palsy and asthma places him at a higher risk for coronavirus infection which prevented him from collecting signatures himself.[4]

Mr. Acosta does not plead how many signatures he collected before, during, or after Governor Wolf issued the emergency orders. The Governor's emergency stay-at-home order expired on June 4, 2020.[5]

## II.    Analysis

Mr. Acosta claims Pennsylvania law mandating independent candidates for non-statewide offices obtain signatures from "at least equal to two per centum of the largest entire vote cast for any officer . . . elected at the last preceding election said electoral district"[6] conflicts with the Supreme Court's decision in *Illinois State Board of Elections v. Socialist Workers Party*.[7]  He also argues the Governor's COVID-19 emergency orders precluded his ability to enlist volunteers to help with his campaign to obtain the required signatures.[8]

This is not the first time Mr. Acosta seeks to invoke our limited jurisdiction to pursue his election strategy.[9] He most recently blamed COVID-19 social distancing orders violated his constitutional rights to be a candidate on the November 3, 2020 ballot.  In his May 28, 2020 complaint at No. 20-2528, Mr. Acosta *pro se* sued Governor Wolf and Secretary Boockvar challenging Pennsylvania's signature requirement during the COVID-19 pandemic as violating his rights as a job applicant under the Civil Rights Act of 1964 and the Americans with Disabilities Act.[10] He requested we exempt him from Pennsylvania's signature requirement and place him on the November 3, 2020 election ballot.[11] We dismissed Mr. Acosta's initial complaint but granted him leave to amend. He filed an amended complaint. We dismissed his amended complaint on June 30, 2020 with prejudice for failing to state a claim upon which relief can be granted.[12] We

later corrected the record to reflect the number of signatures needed for the 2020 general election to the House of Representatives in the challenged Congressional District to be 5,752; not 1,000 as mistakenly stated in our June 30, 2020 Memorandum.[13] Mr. Acosta appealed our dismissal. His appeal is pending.[14]

Ignoring the fact he is challenging this same issue in his appeal, Mr. Acosta once again sues challenging the Governor's COVID-19 orders affecting his perceived right to be a candidate without paying the required filing fees. He raises a legal argument based on his reading of a Supreme Court case not raised before but based on the same facts and harm. Congress requires we screen his complaint for merit before allowing him to proceed with the benefit of not paying fees.[15] If Mr. Acosta's claim lacks merit, Congress requires we dismiss his case before causing the Clerk of Court to issue summons, the Marshal to effect service, and the state actors to expend taxpayer funds in responding. When considering whether to dismiss a complaint for failure to state a claim under section 1915(e)(2)(B)(ii), we use the same standard as Federal Rule of Civil Procedure 12(b)(6), requiring we determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[16] "[W]e accept all factual allegations in the complaint as true and construe those facts in light most favorable to the plaintiff, but we may disregard any legal conclusions."[17]  As Mr. Acosta is proceeding pro se, we construe his allegations liberally.[18]

Mr. Acosta is complaining about access to the November 3, 2020 election ballot, just like his June 2020 case on appeal. We already decided this issue.  Today's issue is whether the doctrine of *res judicata* applies. If *res judicata* applies, Mr. Acosta fails to state a claim upon which relief can be granted. "Claim preclusion and issue preclusion are the currently accepted terms for two different applications of the doctrine of *res judicata*."[19] For claim preclusion to apply, there must

be "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."[20] We address these factors in turn.

***Our dismissal of Mr. Acosta's June 2020 amended complaint is a final judgment on the merits.***

Our June 30, 2020 Order dismissing Mr. Acosta's complaint in No. 20-2528 with prejudice is a judgment on the merits for purposes of *res judicata*. In *Porter v. Cancelmi*, our Court of Appeals held then-District Judge Hardiman's dismissal of a *pro se* plaintiff's *in forma pauperis* complaint for failure to state a claim constituted a final judgment on the merits.[21] Although Mr. Acosta's first action is currently on appeal, "[t]he established rule in the federal courts is that a final judgment retains all of its *res judicata* consequences pending decision of the appeal . . .."[22] For example, in *Ross v. Meyer*, our Court of Appeals held "the pendency of an appeal does not affect the potential for *res judicata* flowing from an otherwise valid judgment."[23] To deny *res judicata* in these circumstances would lead to a bizarre result: Litigants would be able to refile identical cases while appeals are pending, forcing their opponents and the court system into duplicative litigation.[24] We dismissed Mr. Acosta's June 2020 amended complaint in No. 20-2528 for failure to state a claim. Our June 30, 2020 Order is a final judgment on the merits.

***Mr. Acosta's present complaint involves the same parties and their privies.***

Mr. Acosta's June 2020 amended complaint involves the same parties and their privies before us today. In June 2020, Mr. Acosta sued Governor Wolf and Secretary Boockvar. He now sues Governor Wolf, Secretary Boockvar, and Pennsylvania's Department of State, Bureau of Elections.

For claim preclusion to apply, there must be either privity or an otherwise "close or particular relationship between the parties."[25] Privity has "traditionally been understood as referring to the existence of a substantive legal relationship, such as by contract, for which it is

deemed appropriate to bind one of the contracting parties to the results of the other party's participation in litigation."[26] Secretary Boockvar is Secretary of the Department of State for the Commonwealth of Pennsylvania. Because the Bureau of Elections is a department within the Commonwealth's Department of State, which Secretary Boockvar leads, these defendants are in privity.[27]

***Mr. Acosta's claims are based on the same cause of action as his June 2020 claims.***

Mr. Acosta's claims are based on the same cause of action he raised in his June 2020 amended complaint in No. 20-2528. When filing a complaint, a plaintiff is required to "present in one suit all claims for relief that he may have arising out of the same transaction or occurrence."[28] The identity of the cause of action refers "not only to claims actually litigated in the earlier suit, but to those that could have been litigated if they arise from the same underlying transaction or events."[29] To determine whether a successive claim arises from the same underlying transaction or events, we look to see if there is "essential similarity of the underlying events giving rise to the various legal claims."[30]

Mr. Acosta's claims arise from the same underlying event as his June 2020 amended complaint dismissed with prejudice. He argued Governor Wolf's COVID-19 emergency orders precluded him from obtaining the required number of signatures from registered voters to be included on the November 3, 2020 general election ballot and requested we exempt him from the requirement. He alleged the state actors violated his rights as a job applicant under the Civil Rights Act of 1964 and the Americans with Disabilities Act. Mr. Acosta today argues the signature requirement conflicts with the Supreme Court's decision in *Illinois State Bd. of Elections v. Socialist Workers Party*, and again Governor Wolf's emergency orders (as expired on June 4, 2020) precluded him from enlisting volunteers to obtain the required signatures.[31] Both causes of

actions arise out of the same event; his access to the November 3, 2020 general election ballot. He even references facts alleged in his June 2020 suit in the complaint before us today.

The claims today could have been brought in his first complaint. He could have sought damages and not just equitable relief. The Pennsylvania law Mr. Acosta challenges has been effective since October 31, 2019 and the Supreme Court decided his cited case in 1979.[32] Because Mr. Acosta failed to raise this claim in his first cause of action, he cannot now bring the claim in a subsequent action arising from the same underlying events.

Mr. Acosta's request for monetary relief in his second action does not change our analysis. In *Huck on Behalf of Sea Air Shuttle Corp. v. Dawson*, the plaintiff argued because he pursued a different remedy in his second action (monetary damages, instead of the injunctive relief sought in the first action), *res judicata* cannot be applied.[33] Our Court of Appeals held this assertion contrary to the law, quoting Restatement (Second) of Judgments § 25 cmt. F: "[A]fter judgment for or against the plaintiff, the claim is ordinarily exhausted so that the plaintiff is precluded from seeking any other remedies deriving from the same grouping of facts ….").[34] Our Court of Appeals affirmed Judge Moore's dismissal based on *res judicata*.[35]

Although Mr. Acosta seeks a different form of relief than his June 2020 amended complaint, the underlying facts and claims available at the time he filed his first cause of action are the same. Because Mr. Acosta's causes of action arise out of the same event at issue in his first cause of action against the same state actors, and because we reached a final judgment in that suit—dismissal of the action with prejudice—Mr. Acosta's claims are barred by *res judicata*.

## III. Conclusion

Mr. Acosta failed to state a claim upon which relief can be granted under section 1915(e)(2)(B)(ii). We deny him leave to proceed *in forma pauperis* and dismiss this second case

with prejudice as he is barred under *res judicata* from relitigating the same issue currently on appeal.

---

[1] ECF Doc. No. 2, § II.B. at 3 (using the pagination assigned by the CM/ECF docketing system).

[2] *Id.*, § V, at 5.

[3] *Id.*

[4] *Id.*

[5] Governor Tom Wolf, *Gov. Wolf Renews COVID-19 Disaster Declaration for State Response and Recovery, Stay-at-Home Order Ends June 4*, Governor's Office (June 3, 2020), https://www.governor.pa.gov/newsroom/gov-wolf-renews-covid-19-disaster-declaration-for-state-response-and-recovery-stay-at-home-order-ends-june-4/.

[6] 25 Pa. Stat. Ann. § 2911(b).

[7] 440 U.S. 173 (1979). The Supreme Court found unconstitutional the Illinois Election Code requiring independent candidates and new political parties to obtain more than 25,000 signatures to appear on ballot in Chicago. The Court held the signature requirements were not the least restrictive means to protect the State's interest of avoiding overloaded ballots because the signature provisions for Chicago were more stringent than those for the rest of the state.

[8] ECF Doc. No. 2, § V. at 5.

[9] Mr. Acosta previously challenged Pennsylvania election procedures in this Court without paying filing fees and having his claims summarily dismissed. For example, in *Acosta v. Democratic City Committee*, 288 F. Supp. 3d 597, 613-15, 619-20 (E.D. Pa. 2018), Mr. Acosta alleged state officials coerced, intimidated, and engaged in misconduct in a March 21, 2017 special election for Pennsylvania State Representative for the 197th Legislative District. He requested Judge Slomsky declare the results of the special election null and void, order a new special election, and bar the winner of the special election from running as a candidate in the proposed new special election as well as all subsequent elections for the next ten years. *Id.* In January 2018, Judge Slomsky dismissed the complaint for failure to state a claim upon which relief could be granted with leave to amend. *Id.* at 653-53. In August 2018, Judge Slomsky dismissed Mr. Acosta's amended complaint with prejudice for failure to state a claim upon which relief could be granted. *Acosta v. Democratic City Committee*, No. 17-1462, 2018 WL 4178522, at *1, n.11 (E.D. Pa. Aug. 30, 2018). Mr. Acosta appealed Judge Slomsky's holding. *Acosta v. Democratic City Committee*, 767 F. App'x 392 (3d Cir. 2019). Our Court of Appeals rejected all of Mr. Acosta's legal arguments, holding "[e]ach of the claims that [Mr.] Acosta does raise lacks merit." *Id.* at 393.

[10] No. 20-2528, ECF Doc No. 12 at 4-5.

11 *Id.* at 5.

12 No. 20-2528, ECF Doc. No. 15.

13 No. 20-2528, ECF Doc. No. 19.

14 *Acosta v. Governor of Pennsylvania*, No. 20-2391 (3d Cir.) On August 7, 2020, the Clerk of the Court of Appeals referred Mr. Acosta's Motion to proceed *in forma pauperis* to a motions panel. The motion remains pending.

15 28 U.S.C. § 1915.

16 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

17 *McKenna v. Portman*, 538 F. App'x 221 (citing *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (2011)).

18 *Higgs v. Attorney Gen*., 655 F.3d 333, 339 (3d Cir. 2011).

19 *Conceicao v. Nat'l Water Main Cleaning Co*., 650 F. App'x 134, 135 (3d Cir. 2016) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 961 n. 1 (3d Cir. 1991)).

20 *Duhaney v. Attorney Gen. of the United States*, 621 F.3d 340, 347 (3d Cir. 2020) (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir.2008)).

21 318 F. App'x 48 (3d Cir. 2008).

22 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4433, at 308 (1981).

23 741 F. App's 56, 60 (3d Cir. 2018) (quoting *U.S. v. 5 Unlabeled Boxes*, 572 F.3d 169, 175 (3d Cir. 2009)).

24 *See Triparti v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (citing *Warwick Corp. v. Maryland Dep't of Transp*., 573 F. Supp. 1011, 1014 (D. Md. 1983) *aff'd sub nom*, *Warwick Corp. v. Maryland Dep't of Transp.*, 735 F.2d 1359 (4th Cir. 1984).

25 *Avins v. Moll*, 610 F. Supp. 308, 316 (E.D. Pa. 1984), *aff'd*, 774 F.2d 1150 (3d Cir. 1985).

26 *Adefumi v. City of Phila.*, 445 F. App'x 610-11 (3d Cir. 2011) (quoting *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc*., 571 F.3d 299, 311 (3d Cir. 2009)).

27 *See* 4 Pa. Code § 9 Appendix A.

28 *Conceicao*, 650 F. App'x at 135 (quoting *United States v. Athlone Indus., Inc*., 746 F.2d 977, 984 (3d Cir. 1984)).

[29] *Id*.

[30] *Elkadrawy v. Vanguard Grp., Inc*., 584 F.3d 169, 173 (3d Cir. 2009) (quoting *Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp*., 688 F.2d 166, 171 (3d Cir. 1982) (en banc)).

[31] *Illinois State Bd. of Elections*, 440 U.S. 173 (1979).

[32] 25 Pa. Stat. Ann. § 2911(b) (West).

[33] 106 F.3d 45, 50 (3d Cir. 1997).

[34] *Id.*

[35] *Id.* at 52.